**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Broadcast Music Incorporated, et al., | No. CV-19-01358-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| BLK, III LLC, et al., | |
| Defendants. | |

Plaintiff Broadcast Music, Inc. ("BMI"), along with 13 copyright owners (collectively, "Plaintiffs"), filed a motion for default judgment against Defendants BLK, III LLC ("BLK"), Jeffrey Benice, George Fischer, and Kevin Johnson (collectively, "Defendants"). (Doc. 26.) For the following reasons, the motion will be granted in part and denied in part.

I.   **Background**

On February 27, 2019, Plaintiffs brought this action under the United States Copyright Act ("Copyright Act"), 17 U.S.C. § 101 *et seq*. (Doc. 1 ¶ 1.) BMI is a licensor of public performance rights of over 13 million copyrighted musical compositions (the "BMI Repertoire") (*id.* ¶¶ 3, 33), and all other Plaintiffs are the copyright owners of some musical compositions in the BMI Repertoire (*id.* ¶¶ 5-17, 33). Plaintiffs allege that BLK operates BLK Live, an establishment where BLK "publicly performs musical compositions and/or causes musical compositions to be publicly performed." (*Id.* ¶¶ 18-19.) Plaintiffs further allege that Benice, Fischer, and Johnson are BLK's managers and have "the right

and ability to supervise the activities of BLK . . . and ha[ve] a direct financial interest in BLK" and BLK Live. (*Id.* ¶¶ 21-26.) Plaintiffs further allege that Defendants performed musical compositions in the BMI Repertoire at BLK Live without a license or permission. (*Id.* ¶ 34.) According to Plaintiffs, they have contacted Defendants over 95 times since June 2016 regarding Defendants' alleged Copyright Act violations, including formal cease-and-desist notices. (*Id.* ¶ 28.) The complaint alleges that, despite these efforts, Defendants continue to perform the music without a license or permission. (*Id.* ¶ 35.)

Plaintiffs have filed proof that BLK, Benice, Fischer, and Johnson were served with the complaint. (Docs. 7, 16, 18, 23.) Defendants have not responded to the complaint, nor have they appeared in this action.

Plaintiffs filed applications for entry of default against Defendants. (Docs. 14, 20, 21, 24.) The Clerk of Court entered all four defaults, the last of which was entered on October 3, 2019. (Docs. 15, 22, 25).

On December 16, 2019, Plaintiffs filed a motion for default judgment. (Doc. 26.)

II.   **Default Judgment**

Rule 55(b)(2) of the Federal Rules of Civil Procedure governs the entry of default judgment on application by the plaintiff. The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although courts should consider and weigh relevant factors as part of the decision-making process, they are "not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The following factors may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of factual disputes; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the court accepts as true the complaint's well-pled factual allegations, but the plaintiff must establish the damages

sought in the complaint. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Having reviewed the complaint and default judgment motion, the Court finds that the *Eitel* factors favor default judgment in the amount of $70,000, plus attorneys' fees and costs.

    A.    **The First, Fifth, Sixth, and Seventh *Eitel* Factors**

In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh factors are easily addressed.

The first factor weighs in favor of default judgment. If Plaintiffs' motion were denied, Plaintiffs would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Defendants' failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect. To the contrary, Defendants were made aware of the claims against them, as Plaintiffs notified them nearly 100 times, and it appears that some Defendants engaged in unsuccessful settlement negotiations with Plaintiffs after the lawsuit was filed.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 119-20 (2020).

    B.    **The Fourth *Eitel* Factor—The Amount Of Money At Stake**

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. Plaintiffs seek $70,000 in statutory damages,

plus reasonable attorneys' fees and costs in the amounts of $10,550 and $1,868.73, respectively. (Doc. 26 at 6-7.)

Under the Copyright Act, the Court has wide discretion in assessing statutory damages. *See* 17 U.S.C. § 504(c) (allowing "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 *as the court considers just*") (emphasis added). Where the Court has the discretion to reduce the monetary award to a less substantial sum, the fourth *Eitel* factor becomes neutral. *Twitch Interactive, Inc. v. Johnson*, 2018 WL 1449525, *8 (N.D. Cal. 2018).

### C.     The Second And Third *Eitel* Factors—Merits And Sufficiency

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id.*

Plaintiffs assert claims for copyright infringement "based upon Defendants' unauthorized public performance of musical compositions from the BMI Repertoire." (Doc. 1 ¶ 29.) A plaintiff asserting a claim for copyright infringement must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Registration is prima facie evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488-89 (9th Cir. 2000).

The allegations in the complaint are sufficient to establish both elements. First, the complaint alleges that Plaintiffs own the copyrighted works, which have been registered with the United States Copyright Office. (Doc. 1 ¶¶ 3-17, 30-33.) Second, the songs satisfy the originality requirement. *Feist*, 499 U.S. at 345 ("[T]he requisite level of creativity [required to constitute an original work] is extremely low; even a slight amount will

suffice.").

Finally, the complaint alleges that, on various dates, BLK, under the management of Benice, Fischer, and Johnson, publicly performed musical compositions within the BMI Repertoire without a license or permission. (Doc. 1 ¶¶ 19-29.) In June 2016, BMI began reaching out to Defendants by various communication methods to inform Defendants "of their obligations under the Copyright Act and the necessity of purchasing a license." (*Id.* ¶ 28.) BMI included cease-and-desist notices that ordered Defendants to "immediately cease all use of BMI-licensed music." (*Id.*) Despite these efforts, Defendants continued to "provide unauthorized public performance of works in the BMI Repertoire." (*Id.* ¶ 35.) Plaintiffs have provided documentation regarding observed dates on which Defendants performed the compositions without license or permission. (*Id.*; Doc. 1-2.)

Given these allegations (which must be accepted as true), Defendants infringed Plaintiffs' valid copyrights of musical compositions within the BMI Repertoire. Thus, Plaintiffs have met their burden under the second and third *Eitel* factors.

### D. Conclusion As To The *Eitel* Factors

For the reasons stated above, default judgment is appropriate on Plaintiffs' claims for copyright infringement.

## III. Damages

Plaintiffs seek $70,000 in statutory damages ($7,000 for infringement of ten copyrighted works within the BMI Repertoire) in lieu of actual damages. (Doc. 26 at 5.) Such an election is permissible. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) ("Under the 1976 Copyright Act, the plaintiff may elect to recover either actual or statutory damages.").

Section 504(c) permits statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just," or up to as much as $150,000 where the infringement is "willful." The Court is "constrained only by the specified maxima and minima" and should consider "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l*, 909 F.2d at

1336 (quotation omitted).

The Court finds that Defendants' infringement was willful—Defendants purposely caused or allowed the public performance of musical compositions and continued to do so even after BMI provided notification of Defendants' obligations under the Copyright Act. *Broadcast Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1134 (D. Ariz. 2013) ("A defendant willfully infringes on the copyright of another by acting 'with knowledge that the defendant's conduct constitutes copyright infringement.'") (quoting *Peer Int'l*, 909 F.2d at 1336 n. 3).

Although Plaintiffs provide no evidence that Defendants profited from the performance of these songs, the statutory award need not bear any relationship to actual damages. *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) ("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy."). However, courts often award statutory damages on the lower end of the permissible range, even for willful violations with serious ramifications. *See, e.g.*, *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072-73 (D. Ariz. 2006) (awarding $6,000—$3,000 per infringement—as statutory damages for willful infringement in a default judgement where the "means of infringement—an online media distribution system with tens of millions of potential users—has left [plaintiff's copyrighted works] vulnerable to massive, repeated, and worldwide infringement," where "it is likely that the actual number of works infringed by [defendant] is greater than the two brought in this action," and where defendant's conduct was essentially a few drops in the digital piracy bucket, which as a whole was "estimated to have cost the motion picture industry in excess of $858.5 million"). Furthermore, statutory damages "are not intended to serve as a windfall to plaintiffs" in the default judgment context. *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1135 (W.D. Wash. 2019) (awarding the minimum statutory penalty of $750). But "[i]f the copyright laws are to have any effect, a judgment against [a] defendant must be appreciably more than the amount he would have had to expend to obtain permission.

- 6 -

Music users should be put on notice that it costs less to obey the copyright laws than to violate them." *Broadcast Music, Inc. v. TLM Investments, P.L.C.*, 2010 WL 2891524, *5 (D. Ariz. 2010) (citations and internal quotation marks omitted).

Here, an award of $70,000 in statutory damages would further the statutory purposes of the Copyright Act. If Defendants had entered into a license agreement when BMI first contacted them in June 2016, they would have paid approximately $44,092 through October 2019. (Doc 26-3 at 6-7 ¶ 30.) The current annual license fee is approximately $11,286. (*Id.*) Thus, the requested sum of $70,000 represents less than double what it would have cost Defendants for proper licensing. This amount is adequate to give full effect to the Copyright Act but is not excessive. *See, e.g.*, *McDade & Sons*, 928 F. Supp. 2d at 1135 (awarding roughly four times what the licensing fees would have been).

## IV. Permanent Injunction

"[T]he Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (quoting 17 U.S.C. § 502(a)). But the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 392-93.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay,* 547 U.S. at 391.

### A. Irreparable Injury

"[T]here is no presumption of irreparable harm with respect to permanent injunctions" in "run-of-the-mill copyright litigation." *Apple Inc. v. Psystar Corp.*, 673 F.

Supp. 2d 943, 948 (N.D. Cal. 2009), *aff'd,* 658 F.3d 1150 (9th Cir. 2011). Thus, "actual irreparable harm must be demonstrated to obtain a permanent injunction." *Herb Reed Enters., LLC v. Fla. Enter. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). "[E]ven in a copyright infringement case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).

Here, Plaintiffs' motion for default judgment touches upon the issue of irreparable harm in only cursory fashion. It contends that a permanent injunction is warranted because Defendants are "continuing to infringe." (Doc. 26 at 3-4.) However, other documents that Plaintiffs have submitted in this case suggest that "BLK in Arizona has now closed" and that one of the individual defendants, Fischer, "has since relocated to Nashville." (Doc. 28-3 at 3.) Accordingly, Plaintiffs have not established that BLK and Fischer are likely to cause them to suffer irreparable harm in the absence of a permanent injunction.

As for the remaining two defendants, Benice and Johnson, the documents submitted by Plaintiffs suggest that Benice and Johnson currently own and/or are involved in the operation of several additional establishments in California and have refused to enter into licensing agreements at those establishments despite inquiries by Plaintiffs. (Docs. 28, 28-1, 28-2, 28-3.) Thus, even though "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award," *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), the Court is satisfied that Plaintiffs have demonstrated irreparable harm as to Benice and Johnson. *Id.* ("[W]e have . . . recognized that intangible injuries, such as damage to . . . goodwill, qualify as irreparable harm.").

B. **Adequacy Of Legal Remedies**

"District courts must ascertain whether remedies available at law, such as monetary damages, are inadequate to compensate for the injury suffered." *Apple*, 673 F. Supp. 2d at 949. Monetary damages are inadequate where, for example, there is good reason to believe the infringement will continue. *Id.* at 950 ("[M]onetary damages would not prevent

[defendant] from continuing to infringe [plaintiff's] copyrights . . . in the future . . .; indeed, [defendant's] actions throughout this litigation and statements at oral argument reveal a dogged determination to continue. . . .").

Here, as noted, there is evidence that infringement by Benice and Johnson is ongoing at their new establishments. The fact that these Defendants ignored Plaintiffs' many inquiries while operating BLK further suggests that the infringement will continue. Therefore, the legal remedy of damages appears inadequate to deter Benice and Johnson from continuing to infringe Plaintiffs' copyrighted works.

### C. Balancing Of The Hardships

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). *See also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of hardships a court must consider the impact granting or denying a motion for [an] injunction will have on the respective enterprises.").

Here, entering a permanent injunction would help Plaintiffs protect their valuable intellectual property rights. And because Benice and Johnson chose not to participate in this case, the Court has no evidence they would suffer any hardship from the issuance of a permanent injunction. In any event, any "hardship" they would suffer would be limited to the cessation of their theft of Plaintiffs' intellectual property. Thus, this factor weighs in favor of granting the injunction.

### D. Effect On The Public Interest

"The public interest analysis for the issuance of a[n] injunction requires [the court] to consider whether there exists some critical public interest that would be injured by the grant of [injunctive] relief." *Pure Wafer Inc. v. City of Prescott*, 275 F. Supp. 3d 1173, 1179 (D. Ariz. 2017) (quoting *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009)). Here, the public interest would not be disserved by the issuance of an injunction—if anything, the public interest in the orderly administration of the

copyright laws favors the issuance of an injunction.

### E. **Conclusion**

All four *eBay* factors favor granting a permanent injunction as to Benice and Johnson. Thus, the Court will grant Plaintiffs' motion to the extent it seeks a permanent injunction as to those Defendants but will deny it to the extent it seeks a permanent injunction against BMK and Fischer.

### V. Attorneys' Fees And Costs

Plaintiffs also request attorneys' fees and costs pursuant to 17 U.S.C. § 505. "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). In exercising this discretion, district courts are given "wide latitude." *Enter. Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997). Courts consider the following non-exhaustive list of factors when determining whether to grant attorneys' fees: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Id. See also Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (holding that district court properly applied these factors when evaluating fee request by prevailing plaintiff in copyright action).

Here, Plaintiffs prevailed on their copyright infringement claims, which proves those claims weren't frivolous. Plaintiffs also acted with appropriate motives—one of the Copyright Act's goals "is to discourage infringement," *Fogerty*, 510 U.S. at 526, and this suit does that. Plaintiffs were left with no choice but to file this lawsuit after Defendants ignored the nearly 100 attempts by Plaintiffs to contact them. Finally, Defendants asserted no factual or legal arguments (and therefore the non-existent arguments are neither reasonable nor unreasonable). Thus, the first four factors weigh in favor of granting attorneys' fees.

The final factor is neutral. On the one hand, the award of $70,000 in statutory

damages should, standing alone, deter future misconduct by Defendants. On the other hand, Defendants could have avoided litigation by responding to the cease-and-desist letters. Defendants should not be rewarded for running up Plaintiffs' fees in a case in which Plaintiffs were the victims of intellectual property violations.

Balancing these factors, the Court will award the full amount sought by Plaintiffs. Plaintiffs' attorneys spent 43 hours on the case (Doc. 26-4 at 3 ¶ 5), which seems reasonable given the default judgment outcome. Under those attorneys' normal billing structure, this case would have resulted in $19,565 in fees. (*Id.*) However, because the case concluded with a default judgment, a $6,000 flat fee applies, and the client is billed for any unusual circumstances. (*Id.* at 2-3 ¶¶ 3, 5.) Here, the attorney had difficulty serving the out-of-state defendants and engaged in some settlement discussions with Benice before Benice stopped responding. (*Id.* at 3 ¶ 5.) Accordingly, the Court will award $10,550 in attorneys' fees and $1,868.73 in costs.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for default judgment (Doc. 26) is **granted in part and denied in part**, in that default judgment is granted, the request for a permanent injunction is granted as to Benice and Johnson but denied as to BMK and Fischer, and the request for attorneys' fees is granted. A separate judgment will issue, after which the Clerk of Court shall terminate this action.

Dated this 12th day of May, 2020.

_____
Dominic W. Lanza
United States District Judge